[No. 2738. Decided March 28, 1898.]

W. D. GIBSON, *Respondent,* v. A. S. KERRY, *Appellant.*

LIMITATIONS — PARTIAL PAYMENT — BURDEN OF PROOF.

Where the bar of the statute of limitations has been pleaded against an action on account, the burden of relieving the account of the bar by proof of partial payment within the period of limitation, is upon the plaintiff, and, in case of denial of part payment by defendant, can be established only by clear and convincing testimony.

Appeal from Superior Court, King County.—Hon. ORANGE JACOBS, Judge. Reversed.

*Allen & Allen,* and *J. H. Powell,* for appellant.

*Tremper & Winstock,* for respondent.

The opinion of the court was delivered by

REAVIS, J.—Action brought by plaintiff to recover balance on an account for general merchandise sold to defendant and moneys paid and advanced for defendant's use. The complaint alleges that between April 6, 1893, and July 10, 1893, the various items constituting the account were furnished defendant, and that a number of payments were made on this account in lumber, shingles and lathes on the 1st of June, 1893, and that on April 29, 1895, a cash payment of $18 was made on the account by defendant. The answer was a general denial of the material allegations of the complaint and for defense a plea of the statute of limitations. The action was brought March 23, 1897. Payments made by the defendant upon the account stated by plaintiff June 1, 1893, are admitted, but the payment of April 29, 1895, was in issue at the trial. Unless this last item of $18 was a part payment upon the account the bar of the statute had attached before the commencement of the suit. The defendant testified positively that he never made any payment on the account and that the $18 paid to plaintiff on the 29th of April, 1895, was paid for hay sold and delivered to him in 1895. On his examination in chief plaintiff testified relative to the $18 payment:

" Q.—What were the circumstances connected with the payment of this $18; what was it for?

A.—Just about the time the camp was closed down, Kerry told me to get a bill of sale from Kerr, which I did, and as soon as I got it I transferred—sent it to Mr. Kerry, and among that was $18 that was paid me for some hay on that bill of sale.

Q.—This hay that was in the bill of sale, did that belong to you?

A.—No, sir; I just took the order according to Mr. Kerry's instructions, and got the bill of sale according to his instructions.

Q.—What account did you make of the $18 you received?

A.—I gave Kerry credit on that account for it.

Q.—Did Mr. Kerry instruct you to apply it to any particular purpose, this eighteen dollars?

A.—No, sir, no particular purpose, never mentioned it; just paid it over to me, never mentioned about the account."

The plaintiff testified on his cross-examination as follows relative to the $18 payment:

" Q.—Now, that $18 that you claim was paid to you on April 27, was paid to you, I understand you to say, on a bill for hay, was it?

A.—On an order, yes, for hay.

Q.—For a bill of sale, was it not?

A.—Yes, sir.

Q.—Where did you get the hay?

A.—Bill of sale.

Q.—Where did you get the hay?

A.—From the bill of sale which was given, from Kerr.

Q.—You had received a bill of sale from Kerr to some hay?

A.—Yes, sir.

Q.—Anything else besides the hay?

A.—No, sir, I got the bill of sale for this.

Q.—Then you got the bill of sale for some hay and other stuff from Kerr?

A.—Yes, sir.

Q.—Where was this hay and other stuff you got the bill of sale for?

A.—At the camp."

This camp was one where Kerr & Co. were engaged in logging and plaintiff had furnished merchandise to this camp on defendant's account, but had ceased to furnish the same in July, 1893. The logging camp was being removed.

Plaintiff continued:

" Q.—Now, does that hay appear on this bill?

A.—No, sir.

Q.—Nowhere?

A.—No, sir.

Q.—Do any of these items in that bill of sale appear on this bill?

A.—No, sir.

Q.—And the $18 was paid as a part of the articles in that bill of sale, was it not?

A.—No, sir.

Q.—That is the hay?

A.—No, sir.

Q.—It was not paid for that hay?

A.—I didn't consider it so.

Q.—Didn't you testify a while ago that he paid you $18 for the hay?

A.—He paid me $18, that I never considered part of the hay.

Q.—Didn't he understand he was paying you for that hay?

A.—I don't know what he understood.

Q.—Was not he paying you for the hay in that bill of sale?

A.—I don't know.  I presented the order and got my $18."

This order was made by the foreman of the logging camp who got the hay and was made upon the defendant.

" Q.—You presented that order to Kerry, and he paid you $18?

A.—Yes, sir.

Q.—And that was for the hay, was it not?

A.—I didn't—no, sir.

Q.—That order was for the hay?

A.—I don't know whether it was for the hay or not.

Q.—Was it goods that Marion got?

A.—Yes, sir;  he got the goods.

Q.—Did Kerr get the goods for which you received that $18?

A.—Yes, sir, I considered it so.

Q.—If the order was for Marion on Kerry to pay you $18 for hay that he had got, how did you consider it was hay that Kerry got?

A.—I got the order on Kerry, I got a bill of sale on Kerry's instructions, and I depended on him entirely.

Q.—That is, this was how you got this bill of sale?

A.—No, sir, it is not. I got him a bill of sale and itemized everything."

And again the question was asked plaintiff:

" Q.—Now, then, I will ask you again, for what was that $18 paid you?

A.—Well, on the strength of that order he paid me it.

Q.—Now, did you sell that hay to Kerry?

A.—I never considered I sold it to Kerry, no, sir.

Q.—Who did you sell it to?

A.—I never sold it at all, I just presented the order as he told me to get it, which I did, and he gave me $18 for it, and I applied it to his account.

Q.—*Who got the hay?*

A.—*Kerry got the hay.*

Q.—*Then who got the money for the hay?*

A.—*I did.*

Q.—That is the eighteen dollars?

A.—Yes, sir.

Q.—And you credited that on the account you sued for here?

A.—Yes, sir.

Q.—Who did you charge the hay to?

A.—Never charged anybody."

It has been noted that the account of plaintiff was more than three years old when the suit was commenced. The burden, then, of relieving the account against the bar of the statute pleaded was upon the plaintiff, and upon the fact of the payment made on the 29th of April, 1895, having been intended as a part payment on the account. The principle upon which part payment operates as a renewal of the account and a suspension of the statute is because a

promise to pay the balance of the debt is inferred from the partial payment and such payment is considered as an acknowledgment of the debt. Where the debtor makes part payment upon an account without any words of explanation the law infers that such payment is an acknowledgment of the remainder due, and a promise to pay it. In *Tippets v. Heane,* 1 Cromp. M. & R., 252, the rule is well stated:

" In order to take a case out of the statute of limitations by a part payment, it must appear, in the first place, that the payment was made on account of a debt. . . . Secondly, that the payment was made on account of the debt for which the action was brought, . . . and in the third place it is necessary to show that the payment was made as a part payment of a greater debt, because the principle upon which a part payment takes a case out of the statute is, that it admits a greater debt to be due at the time of part payment."

While the jury in answer to the special interrogatory found that the $18 was paid by defendant upon the account generally, it is not supported by substantial evidence. As we view the plaintiff's testimony, it is too evasive and contradictory to establish the fact of a part payment made on the account. It appears from the plaintiff's testimony that the defendant purchased some hay through, or from, the plaintiff, and that defendant paid plaintiff $18 for the same, though this view is not certain; in fact, as already mentioned, the testimony upon this point by the plaintiff is involved and unsatisfactory, and not sufficient to justify the finding of the jury.

The judgment of the superior court is therefore reversed.

SCOTT, C. J., and DUNBAR, GORDON and ANDERS, JJ., concur.